ACCEPTED
15-25-00030-CV
FIFTEENTH COURT OF APPEALS
AUSTIN, TEXAS
4/25/2025 5:59 PM
CHRISTOPHER A. PRINE
CLERK

NO. 15-25-00030-CV

IN THE COURT OF APPEALS
FOR THE FIFTEENTH DISTRICT
AT AUSTIN, TEXAS

FILED IN
15th COURT OF APPEALS
AUSTIN, TEXAS
4/25/2025 5:59:10 PM
CHRISTOPHER A. PRINE
Clerk

IN RE CITY OF DENTON; GERARD HUDSPETH, Mayor of Denton;
BRIAN BECK, Mayor Pro Tem of Denton, VICKI BYRD, PAUL
MELTZER, JOE HOLLAND, BRANDON CHASE McGEE, and CHRIS
WATTS, Members of the City Council of Denton; SARA HENSLEY, City
Manager of Denton; and DOUG SHOEMAKER, Chief of Police of
Denton, in their official capacities,
***RELATORS***

Original Proceeding from the 481st Judicial District Court,
Denton County, Texas
Cause No. 24-1005-481

## REPLY BRIEF IN SUPPORT OF RELATORS'
## PETITION FOR WRIT OF MANDAMUS

| | |
|---|---|
| Mack Reinwand | Jose E. de la Fuente |
| State Bar No. 24056195 | State Bar No. 00793605 |
| Devin Alexander | James F. Parker |
| State Bar No. 24104554 | State Bar No. 24027591 |
| **DENTON CITY** | Gabrielle C. Smith |
| **ATTORNEY'S OFFICE** | State Bar No. 24093172 |
| 215 East McKinney | Sydney P. Sadler |
| Denton, Texas 76201 | State Bar No. 24117095 |
| Telephone: (940) 349-8333 | **LLOYD GOSSELINK** |
| Facsimile: (940) 382-7923 | **ROCHELLE & TOWNSEND, P.C.** |
| | 816 Congress Avenue, Suite 1900 |
| | Austin, Texas 78701 |
| | Telephone: (512) 322-5800 |
| | Facsimile: (512) 472-0532 |

**ATTORNEYS FOR RELATORS**

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................... 2

INDEX OF AUTHORITIES .................................................................... 4

INTRODUCTION ................................................................................... 7

ARGUMENT & AUTHORITIES ............................................................ 10

    A.    The State has failed to establish what issue of material *fact* its discovery is meant to resolve. ..................... 10

    B.    The factual record and jurisdictional challenge have remained unchanged during the pendency of this case. ........................................................................... 12

        1.    The State's framing of its claims exceeds the plain text of the governing statute. ............................. 12

            a.    City Council did not adopt the Enforcement Ordinance. ...................................... 15

            b.    Denton's mere publication of the Ordinance is not legally significant. .................. 24

            c.    The Enforcement Ordinance is not being enforced. ................................................... 27

        2.    The State's arguments are inconsistent with its prior position before this Court. ............................ 31

        3.    The questions before the Trial Court are matters of law, not fact. .............................................. 33

    C.    The State's Response is void of any connection between the discovery sought and resolution of any "jurisdictional fact." ......................................... 35

        1.    The requests by the State exceed the boundaries of permissible discovery. ........................... 35

        2.    The discovery sought is intended to confuse rather than clarify the clear question of jurisdiction that has been pending before the court for 11 months. .................................... 41

    D.    Discovery is not warranted in this unripe case. .................. 45

    E.    The State's failure to address the fact that there is
no adequate remedy by appeal weighs in favor of
granting a writ of mandamus................................................. 47

CONCLUSION AND PRAYER ............................................................. 49

CERTIFICATE OF COMPLIANCE....................................................... 51

# INDEX OF AUTHORITIES

**Cases**                                                                **Page**

*Anderson v. Liberty Lobby,*
477 U.S. 242, 106 S. Ct. 2505 (1986) .................................................. 11

*City of Austin v. Whittington,*
384 S.W.3d 766 (Tex. 2012) ............................................................... 41

*City of Cleveland v. Keep Cleveland Safe,*
500 S.W.3d 438x
(Tex. App.—Beaumont 2016, no pet.) ..................................... 26, 33, 47

*City of Denton v. Grim,*
694 S.W.3d 210 (Tex. 2024) .................................................... 41, 42, 44

*City of San Benito v. Rio Grande Valley Gas Co.,*
109 S.W.3d 750 (Tex. 2003) ............................................................... 41

*Glass v. Smith,*
244 S.W.2d 645 (Tex. 1951) ............................................................... 20

*Isbell v. Ryan,*
983 S.W.2d 335
(Tex. App.—Houston [14th Dist.] 1998, no pet.) ............................... 11

*Klumb v. Hous. Mun. Emps. Pension Sys.,*
405 S.W.3d 204
(Tex. App.—Houston [1st Dist.] 2013) ............................................... 35

*In re Bexar Medina Atascosa Cntys. Water
Control & Improvement Dist. No. One,*
No. 04-24-00538-CV, 2025 Tex. App. LEXIS 787
(Tex. App.—San Antonio Feb. 12, 2025, no pet. h.) ........................... 48

*In re Morris,*
663 S.W.3d 589 (Tex. 2023) (orig. proceeding) ................................. 46

*In re Rogers,*
690 S.W.3d 296 (Tex. 2024) ............................................................... 20

*Lawrence v. Texas,*
539 U.S. 558 (2003) ...................................................... 26

*Mayhew v. Town of Sunnyvale,*
964 S.W.2d 922 (Tex. 1998) ...................................... 45, 46

*Patterson v. Planned Parenthood of Houston,*
971 S.W.2d 439 (Tex. 1998) ...................................... 45, 46

*Perry v. Del Rio,*
66 S.W.3d 239 (Tex. 2001) .............................................. 46

*State v. City of San Marcos,*
No. 15-24-00084-CV, 2025 Tex. App. LEXIS 2657
(Tex. App.—15th Dist. Apr. 17, 2025, no pet.)(mem. op.) .......... *passim*

*State v. Johnson,*
475 S.W.3d 860 (Tex. Crim. App. 2015) ............................... 26

*Tex. Dep't of Parks & Wildlife v. Miranda,*
133 S.W.3d 217 (Tex. 2004) .................................. 11, 33, 35

*Tex. Lottery Comm'n v. First State Bank of DeQueen,*
325 S.W.3d 628 (Tex. 2010) ............................................ 24

*Tooke v. City of Mexia,*
197 S.W.3d 325 (Tex. 2006) ............................................ 33

*Waco Indep. Sch. Dist. v. Gibson,*
22 S.W.3d 849 (Tex. 2000) .............................................. 45

## Statutes

Tex. Gov't Code § 552.005 ...................................................... 39

Tex. Loc. Gov't Code § 9.005.................................................... 32

Tex. Loc. Gov't Code § 370.003 ....................................... *passim*

Tex. Penal Code § 21.06........................................................ 26

Tex. Penal Code § 42.11........................................................ 26

## Rules

Tex. R. Civ. P. 166a ............................................................................................ 11

Tex. R. Civ. P. 192.3(a) ..................................................................................... 40

Tex. R. Evid. 401 ............................................................................................... 40

Tex. R. Evid. 402 ............................................................................................... 40

# INTRODUCTION

The State's Response still fails to answer the only relevant question: what *jurisdictional* discovery is actually needed? Of course, the reason for that failure to answer is because there is no answer: *no discovery is needed to resolve the sole jurisdictional question*. The logical sequence is plain and direct:

1. The sole legal question determining jurisdiction is: did either a) the <u>Denton City Council</u> or b) the <u>Denton Police Department</u> "adopt a policy" not to fully enforce marijuana laws, in violation of Local Government Code Section 370.003?

   The only relevant evidence to answer that question is as follows:

2. The Denton City Council a) acts only as a body via votes taken at open meetings, and b) records of all such action are readily available to the public, including the State (*see* https://www.cityofdenton.com/242/Public-Meetings-Agendas).

3. The Denton Police Department a) adopts policies via "General Orders" which b) are published and readily available to the public (*see, e.g.*, General Order 529, related to "Marihuana Enforcement" at https://www.cityofdenton.com/DocumentCenter/View/7640/Marihuana-Enforcement-General-Order?bidId=).

The only two relevant bodies—the Denton City Council and Denton Police Department—"adopt policies" by actions that are public in nature. Thus, the full scope of those actions is apparent and available without any need for discovery; it is literally available to the whole wide world

7

via a simple internet search. The State knows what the City Council and Police Department did (and equally, what they did *not* do). The State pleaded the action upon which it bases its claim—which is one of the most elementary requirements of the Rules of Civil Procedure and State law (if a Plaintiff complains that a particular act taken by a defendant is actionable, the Plaintiff must state in its pleading the act about which it complains).

The next step is for the Trial Court to decide whether the single action of the City Council the State complains of (the act of "codif[ying] and publish[ing]" the ordinance; the State does not allege *any* act on the part of the Denton Police Department) indeed violates Section 370.003 or whether it does not, and the Defendants thus retain their immunity. Additional discovery does not figure into that calculus in any respect.

The State's Response leans into policy arguments, demonstrates the State's desire to inquire into and discuss consequences of allegedly wrongful actions, the ills of marijuana use, explore information provided and thought processes engaged in, etc. None of which have any bearing on the foundational, predicate question: has the State pleaded a jurisdictional claim? The Trial Court should answer that question. And

neither the Trial Court nor the State need any further discovery to do so, no matter how much the State may not like the answer that they already know is the correct one.

This Court should grant Relators' Petition for Writ of Mandamus in its entirety, ordering the Trial Court to proceed to what it should do—answer the question of jurisdiction *first*—without requiring Relators to respond to any of the State's unnecessary and improper discovery requests.

## ARGUMENT & AUTHORITIES

The State of Texas wants broad discovery from immune entities and persons regarding a case that it has not really pleaded. Texas Local Government Code Section 370.003 only prohibits a specific list of actors from taking a single act—adopting a policy that would prohibit fully enforcing drug laws. The State hasn't pleaded facts to support its claims and the public record of actions taken—and not taken—conclusively resolves all facts. The only thing left is for the Trial Court to make a determination on Relators' jurisdictional challenge.

Accordingly, Relators seek relief from the Trial Court's Discovery Order.

### A. The State has failed to establish what issue of material *fact* its discovery is meant to resolve.

The order that this Court has for consideration is the Trial Court's Discovery Order. To explain the impropriety of the Discovery Order, however, it is necessary to address the bases of Relators' Plea to the Jurisdiction, which illuminate the impropriety of the broad discovery granted below.

Relators filed an evidentiary Plea to the Jurisdiction on May 20, 2024. (MR 29–205.) When a "jurisdictional challenge implicates the merits of the

[plaintiff's] cause of action and the plea to the jurisdiction includes evidence, the Trial Court reviews the relevant evidence to determine if a fact issue exists." *Tex. Dep't of Parks & Wildlife v. Miranda,* 133 S.W.3d 217, 227 (Tex. 2004). In evaluating an evidentiary plea to the jurisdiction, the standard of review "generally mirrors that of a summary judgment under Texas Rule of Civil Procedure 166a(c)." *Id.* at 228.

To defeat a motion for summary judgment, the non-movant needs to show a *genuine* dispute of *material* fact. Tex. R. Civ. P. 166a. A fact is considered "material" in the context of summary judgment in Texas if it affects the outcome of the suit under the governing substantive law. *Isbell v. Ryan*, 983 S.W.2d 335, 338 (Tex. App.—Houston [14th Dist.] 1998, no pet.) citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S. Ct. 2505 (1986). This determination is made by examining the substantive law applicable to the case, as only those facts identified by the substantive law can be deemed material. *Id.*

None of the facts referenced in the State's response are material to determining the sole matter at issue in this case. For the State to establish a need for jurisdictional discovery, it first needs to identify facts that are or could be in dispute regarding the specific question of jurisdiction.

**B.**     **The factual record and jurisdictional challenge have remained unchanged during the pendency of this case.**

In its Response, the State says that the calculus changed when Relators filed an evidentiary plea to the jurisdiction stating (1) that "adopting and publishing of [the Enforcement Ordinance] was merely a ministerial act," and (2) that the City nor the Denton Police Department enacted policies. (*See* State's Resp. at 6.). The State contends this created two "jurisdictional fact" questions: (1) whether any City Officials implemented policies to enforce the Enforcement Ordinance, or (2) whether any city councilmember exercised discretion when voting on the ordinance? This characterization by the State both misrepresents the legal and factual bases of Relators' jurisdictional challenge, as well as the procedural history of this case.

**1.**     *The State's framing of its claims exceeds the plain text of the governing statute.*

The State no longer wants to be bound by the words it not only pleaded but repeated in opposing Relators' Plea to the Jurisdiction. The State correctly asserted in the live petition that no discovery is needed in this case. Now, however, the State says that the landscape changed when Relators denied enforcement or implementation of the Enforcement Ordinance and created a need for discovery.

12

Two chief issues exist with that ad hoc rationale, however. First, *adoption* of a policy that would prohibit full enforcement of drug laws must be the violative act pleaded. Second, when Relators submitted those statements in their Plea to the Jurisdiction (which create no more of a fact issue than a general denial of a claim), the State didn't ask for discovery— it asked the Trial Court to rule. (MR 0229 "Plaintiff, the State of Texas, by and through the Office of the Attorney General, asks that this Court deny City Defendants' Plea to the Jurisdiction.".)

The Plea to the Jurisdiction was filed on May 20, 2025. (MR 29–205.) The State filed its Response on May 30, 2024, the night before the hearing on that Plea, set by agreement of the parties. (MR 206–31.) No discovery was sought prior to the agreed hearing on Relators' Plea, which was set for May 31, 2024. In fact, though the State fails to address this, the parties agreed to put off even initial disclosures until after the hearing. (MR 299–300.) The facts and challenge asserted by Relators are not new, but the State's purported need for expansive discovery certainly is.

The State further conflates arguments and facts asserted by Relators and ignores key verbiage in the plain and unambiguous text of Section 370.003 of the Texas Local Government Code to cobble together an

attempt to complicate this litigation by seeking needless discovery, and ultimately to try and muddy the waters to give the appearance of a fact issue to keep its claims alive.

The subjects and the verb in Section 370.003 are clear.

1. The governing body of a municipality, the commissioners court of a county, or a sheriff, municipal police department, municipal attorney, county attorney, district attorney, or criminal district attorney

2. may not adopt a policy

3. under which the entity will not fully enforce laws relating to drugs, including Chapters 481 and 483, Health and Safety Code, and federal law.

Tex. Loc. Gov't Code § 370.003.[1]

---

[1] In contrast, last month SB 1870 was proposed to amend the text of Section 370.003. Tex. S.B. 1870, 89th Leg., R.S. (2025). The statute that the State is trying to pass today is *not* the statute under which it sued or pursued for the past year.

In particular, the bill analysis for SB 1870 makes clear that the State is looking to pass a law that accomplishes the goals of the suit and a supposed "growing trend across our state." S. Comm. on Crim. Justice, Bill Analysis, Tex. S.B. 1870, 89th Leg., R.S. (as filed Mar. 4, 2025). The proposed legislation prohibits not just "adopting a policy," but "publishing, enforcing, repealing, maintaining, or amending" a "policy, ordinance, order, rule, regulation, charter, or charter amendment." *Id*.

The discovery sought here is not targeted to discover jurisdictional facts, but rather to try to shine a spotlight on this "growing trend." Critically, in the interest of both justice and conscientious stewardship of public resources, immunity is the default, and waiver is the exception. The State's efforts to legislate around the jurisdictional issues in its case based on the current iteration of Section 370.003 highlight that the carve-out to immunity in SB 1870 would be new—meaning that currently there is a bar to litigation based on the sole act alleged by the State here, including the discovery sought by the State.

The only verb and the only violative conduct is "adopt," specifically, adopting a policy prohibiting fully enforcing state and federal drug laws. The State uses "adoption" synonymously with "codifying" and "publishing," but those words have different plain meanings. Likewise, the State's arguments and discovery requests would impute the actions of both the voters and statements of individual councilmembers onto the governing body, trying to create the illusion of a case that fits the text of the statute. But that case does not exist as a matter of public record and discovery is not needed to determine the threshold question of jurisdiction.

### a. City Council did not adopt the Enforcement Ordinance.

Contrary to the State's contention, Relators have never represented in the course of this lawsuit that "adopting an ordinance" is a ministerial act. There is unquestionably discretion involved in adopting most any ordinance. The relevant question in this case is *whose* discretion was exercised?

The State misrepresents the City Council's recorded actions with respect to the Enforcement Ordinance. The State asserts that the City Council "adopted" the Enforcement Ordinance in November 2022. That statement is false, as evidenced by public record with no need for discovery.

15

The ordinance adopted by the City Council in November 2022 was Ordinance No. 22-2447. The subject of *that* ordinance was "canvassing election returns and declaring the results of the special elections." (*See* MR 98.) The full text of Ordinance 22-2447, found at pages 98–100 of the Mandamus Record, reads and appears exactly as follows:

ORDINANCE NO. 22-2447

AN ORDINANCE OF THE CITY OF DENTON CANVASSING ELECTION RETURNS AND DECLARING RESULTS OF THE SPECIAL ELECTIONS HELD ON NOVEMBER 8, 2022; AND PROVIDING AN EFFECTIVE DATE.

WHEREAS, the City Council of the City of Denton, Texas ("City") ordered a special election to be held in the City on November 8, 2022 for the for the propositions of (A) determining whether City Council Member Alison Maguire shall be removed from District 4 Seat of the City Council by Recall and (B) amendment to the Denton Code of Ordinances, creating Chapter 21, Article V to be titled "*Marijuana Enforcement*"; and

WHEREAS, the election officers who held the election have duly made the returns of the result thereof, and these returns have been duly delivered to the City Council; and

WHEREAS, the meeting at which this ordinance was passed was open to the public, and public notice of the time, place, and purpose of said meeting was given, all as required by the Texas Government Code, Chapter 551; NOW THEREFORE;

THE CITY COUNCIL OF THE CITY OF DENTON HEREBY ORDAINS:

SECTION 1. The City Council officially finds and determines the election held on November 8, 2022 was duly ordered, proper notice of this election was duly given, proper election officers were duly appointed prior to this election, this election was duly held, the City has complied with the Federal Voting Rights Act and the Texas Election Code, the returns of the result of this election have been made and delivered to the Council, and the City Council has duly canvassed these returns, all in accordance with the law and the ordinance calling this election.

SECTION 2. The official returns of the election officials having been opened, examined, and canvassed and the City Council officially finds and determines 16,270 votes were cast at this election on the submitted PROPOSITION A, and 46,677 votes were cast at this election on the submitted PROPOSITION B by the residents, qualified electors of the City, who voted at the election and that the votes cast for such propositions on the ballot for the election were as follows:

EARLY/ABSENTEE VOTING:

**CITY OF DENTON PROPOSITION A**

Shall Alison Maguire be removed from the City Council by Recall?

FOR 6,836 AGAINST 3,782

**CITY OF DENTON PROPOSITION B**

Shall an initiative ordinance be approved to eliminate low-level marijuana enforcement?

FOR 24,099    AGAINST 10,213

ELECTION DAY VOTING:

**CITYOF DENTON PROPOSITION A**

Shall Alison Maguire be removed from the City Council by Recall?

FOR 1,847 AGAINST 1,116

**CITY OF DENTON PROPOSITION B**

Shall an initiative ordinance be approved to eliminate low-level marijuana enforcement?

FOR 8,574 AGAINST 2,915

TOTAL VOTES CAST:

**CITY OF DENTON PROPOSITION A**

Shall Alison Maguire be removed from the City Council by Recall?

FOR 8,683 AGAINST 4,898

**CITY OF DENTON PROPOSITION B**

Shall an initiative ordinance be approved to eliminate low-level marijuana enforcement?

FOR 32,673 AGAINST 13,128

SECTION 3. The City Council officially declares the result of said special elections to be that PROPOSITIONS A and B so submitted HAVE received a favorable majority vote in all respects and have CARRIED. The City Council finds and declares that Councilmember Alison Maguire is removed from office by Recall. In accordance with Section 2 of Ordinance No. 22-1198, which is incorporated herein by reference and made a part of this ordinance for all purposes, Chapter 21, Article V of the City Code, to be titled "Marijuana Enforcement" has been approved and adopted by a majority of the qualified voters of the City of Denton, and the City Secretary is hereby directed to enter a full copy of Ordinance No. 22-1198 in the official minutes of this meeting and to codify Section 2 of Ordinance No. 22-1198 in the Denton Code of Ordinance.

SECTION 4. The City Council has found and determined the meeting at which this ordinance is considered is open to the public and that notice thereof was given in accordance with provisions of the Texas open meetings law, Texas Government Code Chapter 551, as amended, and a quorum of the City Council was present.

SECTION 5. This ordinance shall become effective immediately upon its passage and approval.

The motion to approve this ordinance was made by _Gerard Hudspeth_ and seconded by _Jesse Davis_; the ordinance was passed and approved by the following vote [ 6 - 0 ]:

|  | Aye | Nay | Abstain | Absent |
|---|---|---|---|---|
| Mayor Gerard Hudspeth: | ✓ | | | |
| Vicki Byrd, District 1: | ✓ | | | |
| Brian Beck, District 2: | ✓ | | | |
| Jesse Davis, District 3: | ✓ | | | |
| Alison Maguire, District 4: | | | ✓ | |
| Brandon Chase McGee, At Large Place 5: | ✓ | | | |
| Chris Watts, At Large Place 6: | ✓ | | | |

PASSED AND APPROVED this the _22nd_ day of _November_, 2022.

_____
GERARD HUDSPETH, MAYOR

ATTEST:
ROSA RIOS, CITY SECRETARY

BY: _____

APPROVED AS TO LEGAL FORM:
MACK REINWAND, CITY ATTORNEY

BY: _____

(MR 98–100.)

19

The City Council did not just have a right to call the election, place the initiative on the ballot, and canvass the votes—it had an obligation to do so. Last year the Texas Supreme Court reiterated its longstanding position that to do anything *other* than hold and canvas an election for a citizen petition that meets all administrative requirements would be a violation of a ministerial obligation. *In re Rogers,* 690 S.W.3d 296, 301 (Tex. 2024) ("once it is determined that the requisite signatures were included, the mandatory duty to call the election arises, leaving no room for the exercise of any discretion," and "our precedents reflect a strong preference in favor of holding elections on qualified ballot measures even where there is some question about whether the measure, if passed, would be subject to valid legal challenge."); *see also Glass v. Smith,* 244 S.W.2d 645, 653 (Tex. 1951) ("When the people exercise their rights and powers under the initiative provisions of a city charter and thereby become the legislative branch of the city government, the members of the City Council, like other city officials and employees, become ministerial officers in the legislative process, burdened with the mandatory obligations of performing the duties imposed upon them incidental to carrying out the initiative procedure.").

20

The State has consistently and incorrectly characterized the Council's action in passing Ordinance No. 22-2447 as "adopting the Ordinance" (apparently, meaning the Enforcement Ordinance itself), but it is a matter of clear and uncontroverted public record that the only action taken by the City Council was ministerial tabulation of the votes required by state law. As the Ordinance No. 22-2447 states in plain language:

> from office by Recall. In accordance with Section 2 of Ordinance No. 22-1198, which is incorporated herein by reference and made a part of this ordinance for all purposes, Chapter 21, Article V of the City Code, to be titled "Marijuana Enforcement" has been approved and adopted by a majority of the qualified voters of the City of Denton, and the City Secretary is hereby directed to enter a full copy of Ordinance No. 22-1198 in the official minutes of this meeting and to codify Section 2 of Ordinance No. 22-1198 in the Denton Code of Ordinance.

(MR 99, emphasis added.)

Denton voters, not the City Council, adopted the proposition that became the Enforcement Ordinance. Ordinance No. 22-2447 was *not* the Enforcement Ordinance; it pertained only to canvassing and certifying election results (and thus is accurately characterized as the "Election Confirmation Ordinance"). The City Council's action in adopting the Election Confirmation Ordinance, which simply confirmed that a majority of *voters* had adopted the Enforcement Ordinance, was not an act of adopting the Enforcement Ordinance.

21

That the November 2022 Election Confirmation Ordinance was not an action of the City Council to adopt the Enforcement Ordinance was borne out by both previous and subsequent City action. When a citizen petition initiative is received, the Denton City Charter requires the City Council to either 1) adopt the ordinance verbatim, or if the City Council fails to adopt the proposed ordinance, 2) to submit the referred ordinance to the electors. Denton City Charter, Denton, Tex., Code of Ordinances pt. 1, art. IV, § 4.07–.08. The City Council *did* exercise discretion by not adopting the Enforcement Ordinance when it was initially presented by citizen petition, and only thereafter submitted the Enforcement Ordinance to the voters for a Special Election as obligated by the City Charter. Six months after the Special Election, the City Council again exercised discretion with respect to the Enforcement Ordinance. Minutes from the June 6, 2023 Open Meeting detail exactly what the City Council did with respect to the Enforcement Ordinance:

City of Denton City Council Minutes
June 6, 2023
Page 9

5.  **ITEM(S) FOR INDIVIDUAL CONSIDERATION**

A.  ID 23-1121 Consider adoption of an ordinance of the City of Denton adopting Chapter 21, Article V, of the City of Denton code of ordinances, titled "Marijuana Enforcement"; providing repealer, cumulative, and severability clauses; and declaring an effective date. **DENIED**

There were no online registrations or call-ins on the item.

The item was presented and discussion followed.

Citizen comments received are noted on Exhibit A.

Following discussion, Council Member Holland moved to deny the item as presented. Motion seconded by Council Member Watts.

Motion carried.

AYES (4): Mayor Hudspeth, Council Members Byrd, Holland, and Watts
NAYS (3): Mayor Pro Tem Beck, Council Members Meltzer, and McGee

(MR 179.)

When presented with a chance to adopt the Enforcement Ordinance as an act of the City's governing body—the specific act that the State contends would violate the law—*the City Council said "no."*

Likewise, while the State pleads that any order or directive of the Denton Police Department adopting or implementing the Enforcement Ordinance should be voided, it has never cited any such order or directive despite having already been directed to the Police Department's orders. The State does not point to any such order or directive because none exist.

23

### b. *Denton's mere publication of the Ordinance is not legally significant.*

The State tries to assign import to the codification or publishing of the Enforcement Ordinance and conflate that limited act with "adoption." "We presume the Legislature selected language in a statute with care and that every word or phrase was used with a purpose in mind." *Tex. Lottery Comm'n v. First State Bank of DeQueen,* 325 S.W.3d 628, 635 (Tex. 2010).

As set out above, neither the City Council nor the Police Department adopted the Enforcement Ordinance or any policy adopting its provisions. The Ordinance was self-enacting when a majority of the voters approved it—*publishing it* afterwards was a ministerial act that gave it no more or less weight or enforceability. Denton City Charter, Denton, Tex., Code of Ordinances pt. 1, art. IV, § 4.10 (stating that a citizen-initiated ordinance "shall be published.") The plain meanings of the words "adoption" and "publication" are not the same, and there is no reason to assume that publishing an ordinance *already passed by the voters*, which the Charter says must be published, is a separate act of adoption. Further, "publish" or "publication" is nowhere to be found in the list of actions proscribed by Section 370.003 of the Local Government Code.

The City had a ministerial obligation to publish the Enforcement Ordinance pursuant to its Charter, and the inaction of not removing the language from the published record—despite the City's explicit intent not to enforce it—does not create a conflict or fact question.

Last week, this Court issued an opinion in the State's appeal of the Hays County Trial Court's order dismissing claims against the City of San Marcos, recognizing that:

> . . . the Texas Supreme Court has held that when "a court declares a law unconstitutional, the law remains in place unless and until the body that enacted it repeals it, even though the government may no longer constitutionally enforce it." *Pidgeon v. Turner,* 538 S.W.3d 73, 88 n.21 (Tex. 2017). The same is necessarily true when an ordinance is held to be preempted—it is unenforceable, but it does not disappear.

*State v. City of San Marcos*, No. 15-24-00084-CV, 2025 Tex. App. LEXIS 2657, at *35 (Tex. App.—15th Dist. Apr. 17, 2025, no pet.)(mem. op.).

Once the Enforcement Ordinance was adopted by the voters (presuming *arguendo* that the Council adopting it would be barred by law), Relators could only choose not to enforce and decline to vote as a Council to adopt it. Relators did both of those things. And *that* pivot point (whether the City Council or Police Department took action to adopt the Enforcement Ordinance as policy *after* the voters expressed their will and their votes were

25

counted) is where the jurisdictional inquiry begins and ends. *City of Cleveland v. Keep Cleveland Safe,* 500 S.W.3d 438, 450 (Tex. App.—Beaumont 2016, no pet.) (observing that with respect to an ordinance that would be illegal if enforced, "the proper practice is to wait until the ordinance is passed ***and the city attempts to operate under it*** before seeking relief against the city.") (emphasis added, cleaned up).

Regardless of the court's ultimate determination of the State's UDJA claim, the publishing or codification by any City Official does not violate the text of Section 370.003 nor is it inconsistent with longstanding jurisprudence recognizing that a law on the books is just ink—not a continuing discretionary act. In fact, multiple unconstitutional provisions remain on "the books" in Texas despite the courts holding them unconstitutional. *See e.g.,* Tex. Penal Code § 21.06 (declared unconstitutional by *Lawrence v. Texas,* 539 U.S. 558 (2003); *see also* Tex. Penal Code § 42.11 (anti-flag burning statute which remains on the books despite being declared unconstitutional in *State v. Johnson,* 475 S.W.3d 860, 862 (Tex. Crim. App. 2015)).

Not only is the plain meaning of the publishing and codifying different from adopting or implementing, the treatment by Texas courts confirms it.

### c. *The Enforcement Ordinance is not being enforced.*

The State also contends that it needs discovery because "Relators raised issues of jurisdictional fact by claiming that neither the City of Denton nor the Denton police department have enacted policies." (State's Resp. at 6.)

In particular, the State focuses (almost to the exclusion of the public record evidence), two declarations submitted by the City Manager and the Chief of Police. The City Manager's declaration attached to the Plea to the Jurisdiction does not raise any new issue that requires discovery.[2] Rather, it is entirely consistent with her letter published 18 months prior to the

---

[2] At page 10 of its Response, the State complains that "conclusory" statements in these declarations attached to the Plea to the Jurisdiction are not supported by any claimed current policies and are not competent evidence. This contention again highlights that the discovery sought is just a gambit to stall and keep this case alive. The City Manager's and Police Chief's statements are in the negative—*of course* they cannot be supported by citation or reference to policies *when no policies have been adopted*. Similarly, statements that the City Council (which as a matter of law acts only by public vote) has not adopted a policy could be readily controverted by a review of the City Council's meeting minutes, which were also attached to the Plea to the Jurisdiction. If the Police Department adopted a policy/General Order it would be found in the publicly available General Orders. *See* Denton Police Department, *General Orders,* https://www.cityofdenton.com/DocumentCenter/View/814/General-Orders-Updated-Dec-5-2024-PDF?bidId= (Updated January 31, 2025, as reflected at the bottom of each page thereof). The State tries to argue that the inherent dissonance found in trying to prove a negative means that the statements made by Relators are not "readily controverted." On the contrary, the burden is on the State, and always has been, to plead an act in the first instance that would violate the law. Failing to do so does not entitle the State to now go rummaging about via discovery to try to find one.

filing of Relators' Plea to the Jurisdiction—*a letter that was attached to the State's Original Petition.* (MR 23–26.) Likewise, Chief Robledo's declaration is consistent with the former Chief's statements quoted in the State's petition at Exhibit 1. (*Compare* MR 23–26 *with* MR 202–03.)

This Court recently issued an opinion in the State's appeal against the City of San Marcos, modifying in part and overruling in part the Trial Court's order granting the plea to the jurisdiction in that case. *State v. City of San Marcos*, No. 15-24-00084-CV, 2025 Tex. App. LEXIS 2657 (Tex. App.—15th Dist. Apr. 17, 2025, no pet.)(mem. op.). That case is notably distinguishable from the matter underlying this original proceeding. In both cities, the respective ordinances were passed by an affirmative vote of the citizens. But while the State sued under the same legal authority and alleged the same acts, the underlying (and undisputed) facts are materially different with significantly diverse legal implications. In San Marcos, there was no public disclaimer of adherence to or compliance with the citizen-adopted ordinance. In the case underlying this original proceeding regarding non-jurisdictional discovery, Denton and the City Officials consistently, expressly, and publicly disclaim that the Enforcement

28

Ordinance is being implemented. The City's ability to prove a negative is limited by the boundaries of logic and common sense.

Any "act" by the City is a matter of public record—public record that is already part of the record before this Court and the Trial Court. Additional discovery cannot change that or provide anything of probative value in determining whether the named officials adopted a policy to prohibit fully enforcing state and federal drug laws.

The question for the Trial Court is a question of law only.

Further, this Court's analysis of the City Manager's role in the State's appeal in San Marcos applies to the City Manager and other Relators in this case. "We agree with the City Officials that the State has not pleaded or presented evidence of an act taken by Reyes *to implement or enforce the Ordinance*, so the Trial Court did not err by granting the plea to the jurisdiction." *State v. City of San Marcos*, No. 15-24-00084-CV, 2025 Tex. App. LEXIS 2657, at *30 (Tex. App.—15th Dist. Apr. 17, 2025, no pet.)(mem. op.) (emphasis added).

There is no pleaded allegation that Chief Robledo "took an act to implement or enforce the Ordinance." Any search for evidence of such through discovery could *only* flow from a good-faith allegation that Chief

29

Robledo *has taken such action, which can only be reflected through the General Orders*[3]. There is no such allegation here; any such allegation made actually would be in bad faith.

Denton's Police Department did not adopt any General Order. The General Order on marijuana enforcement has remained unchanged since before November 2022, and there is no allegation to the contrary.

Similarly, Denton's City Council did not adopt any policy regarding enforcement of drug laws—the only relevant evidence is the minutes of the City Council meetings which reflect (1) the Council did not adopt the Enforcement Ordinance when presented by citizen petition, 2) the passage of the Election Confirmation Ordinance reflecting only the canvassing and publishing of the Enforcement Ordinance that was passed by the voters (with no further action), and (3) a later vote of the Council *declining* to adopt the Enforcement Ordinance.

There is no pleaded allegation that any of the City Officials adopted a policy in contravention of Section 370.003 because no such action occurred.

---

[3] *See* Denton Police Department, *General Orders,* https://www.cityofdenton.com/DocumentCenter/View/814/General-Orders-Updated-Dec-5-2024-PDF?bidId= (Updated January 31, 2025, as reflected at the bottom of each page thereof).

## 2. *The State's arguments are inconsistent with its prior position before this Court.*

The City's actions actually comport with the State's position on what a City *should do* when presented with a citizen-initiative petition like this. In advance of oral argument in related appeals involving the City of Austin and the City of San Marcos, the State filed a letter brief to the Court highlighting the City of Bastrop as the model to avoid litigation over a citizen-initiative related to enforcement of marijuana offenses. Appellant's Letter Br., *State v. City of Austin, et al.*, No. 15-24-00077-CV (filed Feb. 4, 2025). In Bastrop, the City Council declined to adopt a charter amendment that would change enforcement options for low-level marijuana offenses, similar to the Enforcement Ordinance passed by the Denton voters and the voters in the other cities sued. Critically different from the suit underlying this original proceeding, the proposal submitted to the voters of Bastrop was a charter amendment—not a proposed ordinance.

Charter amendments are governed by chapter 9 of the Texas Local Government Code.

> (a) A proposed charter for a municipality or a proposed amendment to a municipality's charter is adopted if it is approved by a majority of the qualified voters of the municipality who vote at an election held for that purpose.

31

**(b) A charter or an amendment does not take effect until the governing body of the municipality enters an order in the records of the municipality declaring that the charter or amendment is adopted.**

Tex. Loc. Gov't Code § 9.005 (emphasis added).

That is, an *additional* step—the order of a city's governing body adopting the amendment—is required to make the amendment effective. Bastrop City Council chose not to carry out subsection (b), or step 2. In Denton's case, for the adoption of the Enforcement Ordinance to be effective, there was no step 2 required. Sec. 4.10 of the Denton City Charter states that "[i]f a majority of the electors voting on a proposed initiative ordinance shall vote in favor thereof, it shall thereupon be an ordinance of the city." Denton City Charter, Denton, Tex., Code of Ordinances pt. 1, art. IV, § 4.10. Once the voters passed it, it was effective.

What the Denton City Council has instead done is affirmatively vote *against* adopting the Enforcement Ordinance as an ordinance of the City in open meeting. (MR 179.)

What Denton has done is consistently state that the Enforcement Ordinance will not be implemented.

What Denton did was to avoid crossing the actionable Rubicon, per the courts, of "attempt[ing] to operate under" the Enforcement Ordinance after the voters passed it. *Cleveland*, 500 S.W.3d at 450.

What Denton has done is *exactly* what the State of Texas told this Court a city should do under these facts. Certainly, no discovery is needed on action, or inaction, that never should have resulted in a lawsuit in the first place.

### 3. The questions before the Trial Court are matters of law, not fact.

The reason the State is not entitled to the discovery sought is because the Trial Court lacks subject-matter jurisdiction, and there are no issues of fact to discover or decide. Relators' Plea to the Jurisdiction based on governmental immunity should be decided now. The immunity that shields Relators in this case extends to immunity from needless litigation. The goal of a plea to the jurisdiction "is to defeat a cause of action for which the state has not waived sovereign immunity (usually before the state has incurred the full costs of litigation)." *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 228 (Tex. 2004). Immunity serves "to shield the public from the costs and consequences of improvident actions of their governments." *Tooke v. City of Mexia*, 197 S.W.3d 325, 332 (Tex. 2006).

There is no dispute as to what happened in Denton, or as to the single pleaded act of publishing and codifying the Enforcement Ordinance. Either a prohibited policy was adopted by the Denton Police Department and City Council by that pleaded act, or it was not. The court decides that as a matter of law. The number of arrests, officer disciplinary history, or any other "fact" the State contends it needs to discover is not relevant to the question of whether the department *actually adopted* a policy. As cited in the Petition for Writ of Mandamus directing to the General Orders of the Denton Police Department, no such Order exists. If a plaintiff does not have any good-faith basis to plead that Relators have committed a wrongful act as of yet, that raises an issue of ripeness and the correct path is for the plaintiff to dismiss its claim. The State wants the court to adopt an approach of: 1) a plaintiff can file a suit against an action of public officials that does not establish jurisdiction, but then 2) keep that non-jurisdictional case alive to look for new and additional acts that might be sufficient to establish (or create the appearance of) a jurisdictional claim. No case has been cited by that State for that approach because no such case exists, nor could it in a legal reality where the question of jurisdiction—applied based on the

specific factual allegations made, as *Miranda* directs—must be answered first.

**C.    The State's Response is void of any connection between the discovery sought and resolution of any "jurisdictional fact."**

The State tries to craft broad categories for its requests to obfuscate the overreaching nature of the discovery requested and asserts that "[e]ach discovery request that the Trial Court compelled was strategically targeted to resolve these factual issues." (State's Resp. at 3, 5.) A review of the specific requests to which Relators were ordered to respond makes clear that the discovery sought goes beyond any "jurisdictional facts."

***1.    The requests by the State exceed the boundaries of permissible discovery.***

There are cases where limited discovery as to certain disputed facts to rule upon a Plea to the Jurisdiction, are necessary, but the State has consistently failed to show such is the case here. *See Klumb v. Hous. Mun. Emps. Pension Sys.*, 405 S.W.3d 204, 227 (Tex. App.—Houston [1st Dist.] 2013), aff'd, 458 S.W.3d 1 (Tex. 2015) (discovery was not permissible "jurisdictional discovery" where "[n]one of the discovery mentioned by Plaintiffs could have raised a fact issue material to the determination of the jurisdictional plea.").

The State does not explain how—for example—a request asking the City Manager and/or Chief of Police to "[i]dentify all jobs to which you have applied from August 30, 2022 to Present, including the name of the employer, its location, and the ultimate outcome of your application for that job" resolves the question "did the City Council or Police Department adopt the Enforcement Ordinance?" (*See* MR 355–56.) Would Chief Robledo's job search change the policies or directives publicly published for not just the Denton PD but the world to see? Would Ms. Hensley's job search change the votes of the Special Election?

Other interrogatories asking about the public response to the Enforcement Ordinance, or explanation of a Police Department order that has never been identified, are not good-faith interrogatories.

**TO DEFENDANT:** Jessica Robledo

    **INTERROGATORY 19:** Explain the written or unwritten City of Denton Police Department policy, practice, or procedure relating to citations or arrests for felony-level marijuana offenses that has been in effect from November 22, 2022, to Present.

Answer: _____

_____

**TO DEFENDANT:** The City of Denton, Gerard Hudspeth Brian Beck, Vicki Byrd, Paul Meltzer, Joe Holland, Brandon Chase McGee, Jill Jester, Sara Hensley, and Jessica Robledo

    **INTERROGATORY 20:** Identify all inquiries by the public about confusion relating to codification, implementation, or adoption of the City of Denton's Marijuana Ordinance.

Answer: _____

_____

**TO DEFENDANT:** Sara Hensley and Jessica Robledo

    **INTERROGATORY 21:** Identify all documents relied upon in developing the current City of Denton Police Department Policy and Police Directive or General Orders relating to misdemeanor-level marijuana offenses.

Answer: _____

_____

(MR 358.)

Requests posed to City Councilmembers to determine motivations for their votes (and ultimately the City Council voted to deny adopting the Enforcement Ordinance), are not only immaterial but invade legislative privilege.[4]

---

[4] When the trial court asked the State to pose a hypothetical line of questioning that would not violate legislative privilege, the State could not do it. (MR 708:1–709:13.) The trial court could not do it. (*See* MR 710:7–10; *see also* MR 712:7–11.) That's because it cannot be done. Nonetheless, the trial court carried the motion to quash the depositions, signaling the Discovery Order is only the beginning of the improper discovery in this case.

Further, not only do the requests seek immaterial facts or facts already known, the discovery requests seek admissions to legal conclusions.

**TO DEFENDANTS:** The City of Denton, Gerard Hudspeth, Brian Beck, Vicki Byrd, Paul Meltzer, Joe Holland, Brandon Chase McGee, Jill Jester, and Sara Hensley

**Request 5.** Admit that following a vote on the Marijuana Ordinance on June 6, 2023, the Marijuana Ordinance remained in the Code of Ordinances.

ADMIT    OR    DENY

If "Deny" provide explanation:_____

_____

**TO DEFENDANTS:** The City of Denton and Jessica Robledo

**Request 6.** Admit that employees of the City of Denton Police Department have been directed not to cite or arrest individuals for misdemeanor levels of marijuana and misdemeanor possession of marijuana paraphernalia.

ADMIT    OR    DENY

If "Deny" provide explanation:_____

_____

**TO DEFENDANTS:** The City of Denton, Gerard Hudspeth, Brian Beck, Vicki Byrd, Paul Meltzer, Joe Holland, Brandon Chase McGee, Jill Jester, and Sara Hensley

**Request 7.** Admit that the Marijuana Ordinance conflicts with Texas Local Government Code 370.003.

ADMIT    OR    DENY

If "Deny" provide explanation:_____

_____

(MR 378.)

This discovery exceeds not just the boundaries of limited and tailored "jurisdictional" discovery, but *any* permissible discovery under the Texas Rules of Civil Procedure.

38

Likewise, the Requests for Production seek documents and communications among and between various individuals regarding the sentiment surrounding the citizen-initiative. These requests are not tailored to resolve any question of fact as to what *action* any individual or body identified in Section 370.003 *actually* took.[5]

---

[5] The State also cites to the Texas Public Information Act ("PIA") to support its argument that broad-ranging discovery is permissible, which is misplaced. The scope of the PIA does not define the scope of discovery in any case, particularly one in which there is no jurisdiction. *See* Tex. Gov't Code § 552.005 ("This chapter does not affect the scope of civil discovery under the Texas Rules of Civil Procedure."). If the State's argument had merit, it would functionally void all law holding that jurisdictional discovery should be a limited creature, as most all entities asserting a lack of jurisdiction based on immunity are governmental entities to which the PIA applies.

> **REQUEST 2:** Produce all policies or memoranda created by you, from November 2, 2021 to Present, regarding codification, adoption, or implementation of the Marijuana Ordinance.
>
> **REQUEST 3:** Produce all communications and documents sent to or received from, or exchanged by and between you and citizens groups, including Ground Game Texas, Decriminalize Denton, any parties supporting the Marijuana Ordinance, or their agents, employees, or representatives, regarding codification, adoption, or implementation of the Marijuana Ordinance from November 2, 2021 to Present.
>
> **REQUEST 4:** Produce all communications and documents sent to or received from, or exchanged by and between you and the public relating to enforcement of the Marijuana Ordinance and the Marijuana laws of the State of Texas.
>
> **REQUEST 5:** Produce all communications and documents sent to or received from, or exchanged by and between you and law enforcement or their agents, employees, or representatives regarding codification, adoption, or implementation of the Marijuana Ordinance from November 2, 2021 to Present.
>
> **REQUEST 6:** Produce all communications and documents sent to or received from, or exchanged by and between you and the Cities of San Antonio, Elgin, Harker Heights, Killen, Austin, and San Marcos or their agents, employees, or representatives regarding codification, adoption, or implementation of the Marijuana Ordinance from November 2, 2021 to Present.

(MR 368.)

Permissible discovery is cabined to that discovery that is reasonably calculated to lead to admissible evidence. Tex. R. Civ. P. 192.3(a). To be admissible, evidence should be relevant meaning "it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." Tex. R. Evid. 401, 402. That is not the case for any of the "jurisdictional facts" the State claims are at issue, and a review of the requests propounded and to which Relators

40

were ordered to respond to makes that clear. Thus, Relators should be relieved of any obligation to comply with the Discovery Order.

**2. *The discovery sought is intended to confuse rather than clarify the clear question of jurisdiction that has been pending before the court for 11 months.***

The discovery sought attempts to impute statements or acts of individuals to the City's governing body, contrary to Texas law. As the Texas Supreme Court held last year in a case regarding action alleged against a Denton City Councilmember, a "lone city council member lack[s] any authority to act on behalf of the city, and [their] actions therefore cannot be imputed to the city." *City of Denton v. Grim*, 694 S.W.3d 210, 212 (Tex. 2024). The Supreme Court further recognized:

> As with most multi-member governing bodies, the individual members of Denton's city council have no authority to bind the City of Denton through unilateral action, absent a grant of such authority in the city charter or an ordinance. In general, "[c]ities can express and bind themselves only by way of a duly assembled meeting," *City of San Benito v. Rio Grande Valley Gas Co.*, 109 S.W.3d 750, 757 (Tex. 2003), and "the words of one city council member or city employee do not ordinarily bind the entire city council," *City of Austin v. Whittington*, 384 S.W.3d 766, 785 (Tex. 2012). This limitation on the authority of city council members is an inherent aspect of their positions, from which they can wield great power, but only as a group. A city council member's inability to act unilaterally for the city is a basic, definitional aspect of the office. Unlike employees or other agents whom the law or the city council has given legal authority to act for the city, the actions of a lone council member are

41

generally not the actions of the city itself. Nor are violations of law by a lone council member violations of law by the city.

*Id.* at 215–16.

The State's attempt to create an inference of illegal conduct by propounding Requests for Production that seek communications to the City Council or employees of the City is exactly what *Grim* says should not happen. Review of additional discovery requests reveals this is nothing more than a long-line fishing expedition.

> **REQUEST 11:** Produce all copies of communications or documents within your possession relating to the City of Denton Police Administration's demonstrative of marijuana at a City Council meeting from November 2, 2021 to Present.
>
> **REQUEST 12:** Produce all communications and documents sent to or received from, or exchanged by and between you and the Denton County Public Health District or their agents, employees, or representatives regarding marijuana use in the City of Denton from November 2, 2021 to Present.
>
> **REQUEST 13:** Produce all communications or documents within your possession, relating to funding by the City of Denton or the City of Denton Police Department for THC testing from February 13, 2021 to November 22, 2022.
>
> **REQUEST 14:** Produce all communications or documents within your possession, relating to funding by the City of Denton or the City of Denton Police Department for THC testing from November 22, 2022 to Present.
>
> **REQUEST 15:** Produce all communications or documents within your possession, relating to citations or arrests for Class A or Class B misdemeanor possession of marijuana offenses, and for misdemeanor possession of marijuana paraphernalia from February 13, 2021 to November 22, 2022.
>
> **REQUEST 16:** Produce all communications or documents within your possession, relating to citations or arrests for Class A or Class B misdemeanor possession of marijuana offenses, and for misdemeanor possession of marijuana paraphernalia from November 22, 2022 to Present.
>
> **REQUEST 17:** Produce all communications or documents within your possession, relating to training on the Marijuana Ordinance from February 13, 2021 to November 22, 2022.
>
> **REQUEST 18:** Produce all communications or documents within your possession, relating to training on the Marijuana Ordinance from November 22, 2022 to Present.
>
> **REQUEST 19:** Produce all communications or documents within your possession, relating to use of the smell of marijuana for probable cause from February 13, 2021 to November 22, 2022.
>
> **REQUEST 20:** Produce all communications or documents within your possession, relating to use of the smell of marijuana for probable cause from November 22, 2022 to Present.

(MR 369.)

The State contends it needs this discovery because of "conflicting statements" made by individual City Council members. (State's Resp. at 8–10.) But those statements do not and cannot matter, as a matter of law:

43

"statements by individual members of a council or board are not binding on a governmental body which may act only in its official capacity." *Grim*, 694 S.W.3d at 215 n.3 (cleaned up). Expression of thoughts or feelings of any individual and whether or not they conflict do not matter, as the action taken by the *City Council as a whole* is clear and uncontroverted. Similarly, attempted discovery of statements made *to* these individuals, and communications between personnel in Denton and other cities, seeks information extraneous to the claims at issue in this case because it does not assist in answering the sole relevant question of whether a prohibited action was taken by the relevant bodies (the City Council and Police Department).

The discovery sought by the State would explore motivations of individual City Officials and the public under the guise of claims of *ultra-vires* action and preemption. The State is trying to put people, not actions, on trial. That's the discovery that is sought, and that discovery should be barred.

The material facts are known and more importantly are undisputed—additional discovery might turn up immaterial and wholly irrelevant facts, but that is exactly what immunity is intended to avoid.

**D.     Discovery is not warranted in this unripe case.**

As shown above and in light of this Court's most recent opinion in *State v. City of San Marcos*, Relators' acts (in time-order) of (1) not adopting the Enforcement Ordinance when it was initially presented, (2) publishing (and only publishing) the Enforcement Ordinance passed by the voters, and (3) not enforcing the Enforcement Ordinance establish that the State's claim is not ripe, and thus there can be no justiciable controversy or injury sufficient to establish jurisdiction.  It necessarily follows that failure to plead a ripe claim does not entitle a plaintiff to then conduct fishing discovery to try to find something to establish ripeness.

Ripeness is an element of subject matter jurisdiction and "emphasizes the need for a concrete injury for a justiciable claim to be presented." *Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 928 (Tex. 1998), cert. denied, 526 U.S. 1144 (1999); *Patterson v. Planned Parenthood of Houston*, 971 S.W.2d 439, 442 (Tex. 1998).  A case is not ripe when its resolution depends upon contingent or hypothetical facts or upon events that have not yet come to pass. *Waco Indep. Sch. Dist. v. Gibson*, 22 S.W.3d 849, 851 (Tex. 2000).  In addition to restraining courts from issuing unconstitutional advisory opinions, ripeness also has a pragmatic, prudential aspect that

aims to conserve judicial time and resources for real and current controversies, rather than abstract, hypothetical, or remote disputes. *Patterson*, 971 S.W.2d at 443; *Mayhew*, 964 S.W.2d at 928. These factual and prudential concerns underlie the court's determination of ripeness, in which it considers (1) the fitness of the issues for judicial decision and (2) the hardship occasioned to a party by the court's denying judicial review. *Perry v. Del Rio*, 66 S.W.3d 239, 250 (Tex. 2001).

Here, precisely *because* the City Council and the Police Department have not adopted the Enforcement Ordinance or any policy thereunder, the State has failed to establish a concrete injury that warrants discovery, much less that establishes subject-matter jurisdiction. (*See* MR 179; *Mayhew*, 964 S.W.2d at 928; *Patterson.,* 971 S.W.2d at 442.) Unless and until Relators take action beyond ministerially canvassing the election and formally refusing to adopt the Enforcement Ordinance through City Council vote— that is, an action by the City Council to adopt the Enforcement Ordinance and operate under it—the State presents no justiciable action for this Court. *State v. City of San Marcos*, No. 15-24-00084-CV, 2025 Tex. App. LEXIS 2657, at *10 (Tex. App.—15th Dist. Apr. 17, 2025, no pet.)(mem. op.) citing *In re Morris*, 663 S.W.3d 589, 596 (Tex. 2023) (orig. proceeding) ("[T]he right

to call and hold a void election is a political right that the courts have no jurisdiction to interfere with, . . . [ ] the right to enforce a void election in such a way as to violate the laws of this state would present a matter that the judicial power of the government would have the right to give relief from."); *see also City of Cleveland v. Keep Cleveland Safe*, 500 S.W.3d 438, 450 (Tex. App.—Beaumont 2016, no pet.) (directly speaking as to ripeness, declaring that "the proper practice is to wait until the ordinance is passed ***and the city attempts to operate under it*** before seeking relief against the city.") (emphasis added, cleaned up).

Accordingly, as supported by the pleadings, the publicly available records of City actions (and inactions), and this Court's position in *City of San Marcos,* this case is not ripe (and may never be) and Relators should have their plea heard contesting jurisdiction on that basis prior to being required to respond to burdensome discovery.

E.   **The State's failure to address the fact that there is no adequate remedy by appeal weighs in favor of granting a writ of mandamus.**

The State's response makes no mention of the fact that by requiring this non-jurisdictional discovery, Relators have no adequate remedy by appeal.

As explained in the Petition for Writ of Mandamus, the Discovery Order impairs Relators' substantive and procedural rights. "The Legislature specifically granted governmental units . . . the right to an accelerated appeal from a ruling on plea to the jurisdiction for the purpose of avoiding the expense of unnecessary litigation, including pretrial discovery." *In re Bexar Medina Atascosa Cntys. Water Control & Improvement Dist. No. One,* No. 04-24-00538-CV, 2025 Tex. App. LEXIS 787, at *16 (Tex. App.—San Antonio Feb. 12, 2025, no pet. h.)

Relators have a right to have their Plea to the Jurisdiction heard and decided at the earliest opportunity, as well as the right to an accelerated appeal. Requiring compliance with the Discovery Order impairs that right by delaying justice and necessitating the expenditure of significant time and public resources.

Accordingly, the Court should issue a writ of mandamus and relieve Relators from all obligations of the Discovery Order.

## CONCLUSION AND PRAYER

Relators respectfully request that the Court issue a writ of mandamus relieving them from complying with the Discovery Order, or any other discovery, pending ruling on their Plea to the Jurisdiction. Relators further respectfully request that the Court order the Trial Court to hear the City's Plea to the Jurisdiction in its entirety, or alternatively, on the grounds that only need to be decided as a matter of law. Relators further respectfully request that the Court grant them such other and further relief to which they may be justly entitled.

Respectfully submitted,

| | |
|---|---|
| **LLOYD GOSSELINK** | **DENTON CITY** |
|   **ROCHELLE & TOWNSEND, P.C.** |  **ATTORNEY'S OFFICE** |
| 816 Congress Avenue, Suite 1900 | 215 East McKinney |
| Austin, Texas 78701 | Denton, Texas 76201 |
| Telephone: (512) 322-5800 | Telephone: (940) 349-8333 |
| Facsimile: (512) 472-0532 | Facsimile: (940) 382-7923 |

By: */s/ Jose E. de la Fuente*
    Jose E. de la Fuente
    (Attorney-in-Charge)
    State Bar No. 00793605
    jdelafuente@lglawfirm.com
    James F. Parker
    State Bar No. 24027591
    jparker@lglawfirm.com
    Gabrielle C. Smith
    State Bar No. 24093172
    gsmith@lglawfirm.com
    Sydney P. Sadler
    State Bar No. 24117905
    ssadler@lglawfirm.com

Mack Reinwand
City Attorney
State Bar No. 24056195
mack.reinwand@cityofdenton.com
Devin Alexander
Deputy City Attorney
State Bar No. 24104554
devin.alexander@cityofdenton.com

For email contact and service
regarding this
case, please include email
addresses for all
listed attorneys in the
To: field, and include
amy.hoffee@cityofdenton.com
in the cc: field,
until requested otherwise.

**ATTORNEYS FOR RELATORS**

## CERTIFICATE OF COMPLIANCE

I, Jose E. de la Fuente, attorney for Relators, certify that this document was generated by a computer using Microsoft Word 365, which indicates that the word count of this document is 7,285 per Tex. R. App. P. 9.4(i).

*/s/ Jose E. de la Fuente*
JOSE E. de la FUENTE

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Cathy Daniels on behalf of Jose de la Fuente
Bar No. 00793605
cdaniels@lglawfirm.com
Envelope ID: 100123968
Filing Code Description: Other Brief
Filing Description: Reply Brief in Support of Relators' Petition for Writ of Mandamus
Status as of 4/28/2025 7:10 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Jose Ede la Fuente | | jdelafuente@lglawfirm.com | 4/25/2025 5:59:10 PM | SENT |
| James F.Parker | | jparker@lglawfirm.com | 4/25/2025 5:59:10 PM | SENT |
| Amy Hoffee | | amy.hoffee@cityofdenton.com | 4/25/2025 5:59:10 PM | SENT |
| Devin Alexander | | devin.alexander@cityofdenton.com | 4/25/2025 5:59:10 PM | SENT |
| Sydney Sadler | | ssadler@lglawfirm.com | 4/25/2025 5:59:10 PM | SENT |
| Bonnie Freymuth | | bonnie.freymuth@oag.texas.gov | 4/25/2025 5:59:10 PM | SENT |
| Gabrielle C.Smith | | gsmith@lglawfirm.com | 4/25/2025 5:59:10 PM | SENT |
| Zachary L.Rhines | | zachary.rhines@oag.texas.gov | 4/25/2025 5:59:10 PM | SENT |
| Kyle Tebo | | kyle.tebo@oag.texas.gov | 4/25/2025 5:59:10 PM | SENT |
| Laurie DiPierro | | laurie.dipierro@dentoncounty.gov | 4/25/2025 5:59:10 PM | SENT |